SOUTHERN INDIANA RAILWAY COMPANY *v.* FINE.

[No. 20,434.    Filed December 9, 1904.]

PLEADING.—*Complaint.—Employers' Liability Act.*—Where, in a complaint for damages for personal injuries under the fourth subdivision of section one of the employers' liability act (Acts 1893, p. 294, §7083 Burns 1901), on account of the negligence of the conductor of a freight-train, it is charged that the conductor "carelessly and negligently, without any notice or warning to this plaintiff whatever, suddenly signaled, ordered and caused the engineer of said train suddenly to start said locomotive eastward," and it is also alleged that such conductor had full charge of such train, and that when he ordered the engineer to start it would instantly cause plaintiff's working place to become dangerous, is sufficient to show that the said conductor owed a duty to plaintiff to notify him when he signaled the engineer to start. *p. 621.*

TRIAL.—*Argument to Jury.—Improper Remarks of Counsel.—Duty of Court.*—Where, in the argument of a cause to the jury, counsel makes an improper remark to the jury, it is the duty of the court to interfere without objection made; it is also the duty of opposing counsel to make specific statement of the ground of objection, and, if the wrong is not incura-

163    617
f166    70
.f167    374
f167    411
f168    435
f168    460
168    461

163    617
169    10
f169    387
f170    214
170    547

163    617
171    415

Southern Ind. R. Co. *v.* Fine.

ble, to request the court to admonish the jury not to consider the statement, and a motion to withdraw the submission should be overruled. *p. 622.*

TRIAL.—*Argument to Jury.*—*Improper Remarks.*—*Exceptions.*—Where counsel makes an improper remark in the argument to the jury an exception can not be reserved thereto, since by §637 Burns 1901 an exception can be taken only to a decision of the court upon a matter of law, the remedy being in such case to make a specific motion to the court and reserve an exception to the ruling thereon. *p. 623.*

SAME.—*Instructions.*—*Interrogatories.*—*Harmless Error.*—Where an instruction inadvertently assumes a paragraph of complaint to be in the record, when a demurrer to it has been sustained, such error is harmless, when the special answers show that the verdict was rendered upon a paragraph which was in the record, and it makes no difference if some of the interrogatories show that the jury found some facts alleged under the paragraph which was out of the record, provided such answers showed that the elements of the paragraph in the record were all proved. *p. 624.*

SAME.—*Instructions to be Considered as a Whole.*—Where the instructions taken as a whole lay down the law of the case so that a jury will not be misled thereby, they are sufficient. *p. 625.*

MASTER AND SERVANT.—*Personal Injuries.*—*Contributory Negligence.*—*"Last Clear Chance."*—Where it is shown that although plaintiff may have been negligent, nevertheless, if the injury complained of was caused by defendant after becoming aware of plaintiff's danger, the defendant is liable. The doctrine of the "last clear chance" applies. *p. 626.*

APPEAL AND ERROR.—*Conflicting Evidence.*—Where there is a conflict in the evidence the court will not disturb the verdict. *pp. 626, 627.*

From Lawrence Circuit Court; *James B. Wilson,* Judge.

Action by Andrew J. Fine against the Southern Indiana Railway Company for damages for personal injuries. From a judgment entered on a verdict for $1,250, the defendant appeals. Transferred from the Appellate Court under § 1337u Burns 1901. *Affirmed.*

*T. J. Brooks, W. F. Brooks* and *F. M. Trissal,* for appellant.

*J. R. East, R. H. East* and *McHenry Owen,* for appellee.

GILLETT, J.—Appellee filed his complaint in four paragraphs to recover against appellant for negligence. The first three of said paragraphs were held sufficient on de-

murrer. A demurrer was sustained to the fourth paragraph. Appellant closed the issues by a general denial. There was a verdict in appellee's favor, and in connection therewith the jury returned answers to fifty-one interrogatories. Appellant filed a motion for a new trial, which was overruled, and judgment was rendered for appellee.

The errors assigned draw in question the overruling of the demurrer to the first three paragraphs of the complaint, and the overruling of the motion for a new trial.

The case as presented to us is somewhat peculiar, in that the interrogatories which were submitted were so framed as to be calculated to bring out an unusually full disclosure of the findings of the jury on the evidence, and the jury returned such answers that on most, if not all, of the matters on which there would have to be a finding in appellee's favor to warrant a recovery by him, we are sufficiently advised as to what the jury's conclusion was on the questions of fact. It is generally a difficult undertaking to make a narrative statement of the effect of a jury's answers to a long series of interrogatories, and this case is no exception to the rule. Nevertheless, since the findings, or their substance, must be stated if the basis of our rulings on most points is to be made clear, we shall undertake to reduce the matter to narrative. After grouping the findings, so far as possible, according to what seems to be their natural sequence, it may be said that in substance they are as follows: On the 5th day of December, 1899, appellant was engaged in unloading dirt from a train of flat-cars, by means of a plow or shovel, which was pulled eastward by a wire cable, which was stretched lengthwise along said cars and attached to a locomotive. One Charles H. Deer was the conductor, and in full charge of said train. On said day appellee was in the employ of appellant on said train as a cable man, and he had been so working during the three months immediately preceding said date. It was the duty of appellee, while in said employment, to conform

to the orders of said conductor. At the time in question, four cable men, including appellee, were at the east end of said train, engaged in uncoupling the locomotive from the train and preparing to start the plow. On that portion of the train which was nearest the locomotive there was an apron or end board, which it was necessary to let down before commencing to plow. It was the duty of appellee under his employment, as said apron was up, to lower it, preparatory to unloading the dirt. In the straightening of said cable by the locomotive it was a frequent occurrence that the cable would fly to one side, if the apron was up, and it was dangerous, because of such tendency, to stand at said end board and near said cable in such circumstances. Before signaling the engineer to start the locomotive, it was the duty of the conductor to get information that all was ready from the cable men or the brakemen at the head of the train. At the time referred to appellee had gone to said apron for the purpose of lowering it. Although the conductor did not receive any signal that all was ready, and although he knew that appellee was in a dangerous place, and at the place where he was hurt, as hereinafter stated, yet he gave the engineer a signal to start, with the result that the latter suddenly started the locomotive, thereby causing the cable instantly to strike and severely injure appellee, before he had time to escape. At that time appellee was in the line of his duty, standing in the usual place for lowering said apron, and was engaged in so doing in conformity to the orders of the conductor. It is further found that appellee had no warning or notice that the locomotive was about to start, and that he did not know that his location was dangerous, because he had received no signal. The jury answered in the affirmative the twenty-second interrogatory propounded to them, which was as follows: "Was not the plaintiff at the time of his injury using and exercising ordinary care and diligence for his own safety?"

The second paragraph of the complaint was evidently drafted on the theory of stating a cause of action under the first part of the fourth subdivision of section one of the employers' liability act (Acts 1893, p. 294, §7083 Burns 1901). *Indianapolis Union R. Co.* v. *Houlihan* (1901), 157 Ind. 494, 54 L. R. A. 787; *Thacker* v. *Chicago, etc., R. Co.* (1902), 159 Ind. 82, 59 L. R. A. 792. It is objected that this paragraph is insufficient, for the reason that it is not averred that a duty of warning appellee was owing to him, or that he had a right to expect it. It is alleged that Deer had full charge and control of the train, and also that he knew that appellee was standing near the car, and that to give such signal, or order, and so cause the locomotive to start, would instantly cause appellee's working place to become dangerous and unsafe to him. It also sufficiently appears that appellee was in a place where his duty under his employment called him. It is in these circumstances that it is alleged that said conductor "carelessly and negligently, without any notice or warning to this plaintiff whatever, suddenly signaled, ordered, and caused the engineer of said train suddenly to start said locomotive eastward." The failure to give notice is not charged as a substantive ground of negligence. The ground of negligence was the giving of the signal, but we should be prepared to hold, if the averment were that the conductor negligently started the locomotive without giving notice to appellee, that, considering that the conductor was in full charge of the train, and knew that appellee's position would be rendered perilous by starting the locomotive without notice, a duty upon the part of the conductor to give notice was sufficiently disclosed by the facts alleged. A bare allegation of a legal duty amounts to nothing. Facts should be alleged which discloses the existence of the duty, and in this respect the paragraph before us appears to be sufficient. See *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1904), *ante*, 247. We need not consider

the sufficiency of the other paragraphs of complaint, for it sufficiently appears from the answers to interrogatories that the jury found for appellee on the second paragraph.

It is disclosed by a bill of exceptions that in making the ·closing argument one of the attorneys for appellee said to the jury: "Find your general verdict, inserting the amount you will give the plaintiff. Then take each interrogatory, and answer each so that it may dovetail in and agree with your general verdict, and"—at this point the argument was interrupted by one of appellant's attorneys, who objected to said statements, and moved the court to withdraw the submission of the cause from the jury on account of the misconduct of counsel, and he further objected to proceeding with the cause. It is disclosed that the court overruled the objections and motions, and that it stated that it would instruct the jury to answer the interrogatories according to the evidence, to each of which rulings, as the bill states, appellant excepted. Upon the conclusion of the incident, appellee's counsel stated, in proceeding with his argument, "that the plaintiff did not desire a verdict of any kind that was not based upon the evidence." Among the instructions afterwards given is one which directed the jury to "answer each of the interrogatories submitted as the evidence warrants, without reference to your general verdict."

Considering the purpose that answers to interrogatories propounded to the jury are designed to subserve, it is proper in considering them in argument to discuss not only the evidence in its application to the interrogatories, but even to go further, and impress upon the minds of the jurors that, as the verdict and the answers will be considered together, great care should be exercised in the framing of their answers, to the end that the jurors shall fully apprehend the import of each interrogatory, and that their answers shall be in accord with the evidence. But we have no hesitation in stating that the suggestion made by coun-

sel for appellee in arguing the cause to the jury was improper. The objection to the statement in question lay in its strong, if not necessary, implication that, having reached a general verdict in favor of the plaintiff, the jurors should not approach the task of answering interrogatories with ingenuous minds, but that they should do so with a predominant purpose of making such answers as would not be out of accord with a general verdict in favor of the plaintiff.

If in the argument of a cause counsel go beyond the confines of legitimate argument, the court, as a minister of justice, should interfere, and this it should do whether opposite counsel are objecting or not. It does not follow, however, that a litigant who claims to have been prejudiced by improper argument can successfully complain of the failure of the court so to interfere. A duty is devolved upon his counsel directly to bring the matter to the attention of the court, to make specific statement, if reasonably required, of the ground of the objection, and, if the wrong is not incurable, to request the court to admonish the jury not to consider the statement to which the objection is made. *Coppenhaver* v. *State* (1903), 160 Ind. 540; *Robb* v. *State* (1895), 144 Ind. 569; *Worley* v. *Moore* (1884), 97 Ind. 15; *Morrison* v. *State* (1881), 76 Ind. 335. An exception is defined by the civil code as "an objection taken to the decision of the court upon a matter of law." §637 Burns 1901. It therefore follows that an exception can not be reserved to the argument of opposite counsel. *Robb* v. *State, supra; Coppenhaver* v. *State, supra.* It is only where the court has refused to sustain a proper motion that an exception can be reserved in case of improper argument. The making of the statements here under consideration furnished no ground for setting aside the submission of the cause. Appellant was only entitled to have the jury sufficiently admonished without delay that the statements should not be considered.

*Blume* v. *State* (1900), 154 Ind. 343. We may assume that appellant's bill of exceptions concerning the incident states the facts as strongly as was warranted, and we may therefore presume that the statement of the court that it would instruct the jury to answer the interrogatories according to the evidence was made in the presence and hearing of the jury. This was ultimately followed, as we have seen, by an instruction that the jury was to answer each of the interrogatories without reference to the general verdict. While the court might with propriety have given a seasonable and emphatic admonition to the jury, yet, apart from the failure to reserve an exception to the refusal to grant a proper motion, we think that appellant has no just cause to complain of the failure of the court to go further than it did. While much is made of the incident in appellant's brief, yet it appears to us that the failure of the court duly and seasonably to admonish the jury was quite as much the fault of the complaining party as it was of the court.

It is urged by counsel for appellant that there was error in the giving of certain instructions, in that the court inadvertently assumed in said instructions that the fourth paragraph of the complaint, to which a demurrer had been sustained, was in the record. The paragraph mentioned attempted to state a common law liability, it being based on the theory that appellant had negligently failed to provide a safe place. Such an inadvertence as the one mentioned would ordinarily present a serious question, but, in view of the answers to interrogatories, we must refuse to reverse on this ground. It is true that the jury found that the place where appellee was working was rendered unsafe by the act of the conductor, but this was also, in its substance, an element in a state of facts authorizing a recovery under the fourth subdivision of section one of the employers' liability act. In part the elements of the common law liability and of the liability imposed by said

subdivision are common, and as to the further facts which must have existed to warrant a holding that appellant was liable by virtue of the statute, it will be observed that appellee has special findings in his favor. It therefore appears that the jury found for appellee on the second paragraph of his complaint, and whether it was the further purpose of the jury to find for appellee on any other paragraph is wholly immaterial. Appellant was not entitled to a new trial on the ground urged. *Roush* v. *Roush* (1900), 154 Ind. 562, and cases cited; *Baltimore, etc., R. Co.* v. *Harbin* (1903), 160 Ind. 441.

The fifth instruction given by the court contained a detailed statement of the charges of negligence, and it concluded with a statement that if the jury found appellant was guilty of negligence, through its conductor, appellee "might" recover, whether there was any negligence upon the part of the engineer or not. The objection made to this instruction is that it did not charge that the evidence must show that appellee had not assumed the risk. It will be observed that the instruction did not state that appellee was entitled to recover if he proved negligence as alleged, but its effect was to charge the jury that there might be a recovery by appellee although the charge of negligence as to the engineer might not have been made out. The third and eleventh instructions which the court gave to the jury stated very clearly the doctrine of assumed risk; the thirteenth instruction was to the effect that it was necessary for appellee to have a preponderance of the evidence on some paragraph of his complaint in order to recover; and the first instruction, in effect, stated that the burden was on appellee to prove the averments of at least one paragraph of his complaint. We are of opinion, considering the charge as a whole, that it was not misleading upon the point indicated. See *American Rolling Mill Co.* v. *Hullinger* (1904), 161 Ind. 673, 680.

Upon the subject of contributory negligence it is clear that under the findings of the jury that defense was not available. In 1 Shearman & Redfield, Negligence (5th ed.), §99, it is stated: "It is now perfectly well settled that the plaintiff may recover damages for an injury caused by the defendant's negligence, notwithstanding the plaintiff's own negligence exposed him to the risk of injury, if such injury was more immediately caused by the defendant's omission, after becoming aware of the plaintiff's danger, to use ordinary care for the purpose of avoiding injury to him. We know of no court of last resort in which this rule is longer disputed." See, also, *Evansville, etc., R. Co.* v. *Hiatt* (1861), 17 Ind. 102; *Evans* v. *Adams Express Co.* (1889), 122 Ind. 362, 7 L. R. A. 678; *Krenzer* v. *Pittsburgh, etc., R. Co.* (1898), 151 Ind. 587, 68 Am. St. 252; *Pickett* v. *Wilmington, etc., R. Co.* (1895), 117 N. C. 616, 23 S. E. 264, 30 L. R. A. 257, 53 Am. St. 611; *Thompson* v. *Salt Lake, etc., Co.* (1898), 16 Utah 281, 52 Pac. 92, 40 L. R. A. 172, 67 Am. St. 621; *Fonda* v. *St. Paul City R. Co.* (1898), 71 Minn. 438, 74 N. W. 166, 70 Am. St. 341; *Rider* v. *Syracuse, etc., R. Co.* (1902), 171 N. Y. 139, 63 N. E. 836, 58 L. R. A. 125; *Everett* v. *Los Angeles, etc., R. Co.* (1896), 115 Cal. 105, 43 Pac. 207, 34 L. R. A. 350. Under this view of the law, which has been somewhat sententiously phrased as the doctrine of "last clear chance," it is plain that the act of appellant's conductor, for whose negligence the statute rendered appellant responsible, was the efficient and proximate cause of appellee's injury.

Complaint is made of the sixth instruction which the court gave to the jury, but, as that instruction related to negligence upon the part of the engineer, we think that for reasons already sufficiently indicated it is not necessary to express ourselves upon this objection.

It is claimed by counsel for appellant that the verdict is not sustained by the evidence. There is a conflict in the

testimony as to whether the apron was up or down. In the testimony of the conductor he admitted that he saw appellee at the place where he was injured just before the signal to start was given, and that he (the conductor) knew that the cable would be liable to fly. His excuse for giving the signal seems to be based on the claim that the apron was down; that he had before warned appellee to keep away from the cable except when he was required to lower the apron, and that the latter had plenty of time to get away before the locomotive commenced to move the plow. The jury was justified from the evidence in concluding that appellee was struck by the cable as soon as the locomotive commenced to move, and it is but reasonable to suppose that the tendency of the cable to fly would be while the slack was being taken up, and not after the resistance of the plow had taken the lateral kinks and curves out of the cable and caused it to be partially buried in the dirt upon the cars. Regarded apart from the matter of the issues, the jury was fully warranted in concluding that the conductor was negligent. It is claimed, however, that there was a signal given to the conductor, and that therefore the allegation of the second paragraph respecting negligence was not made out. One witness (Emery) testified that he said, "I am ready." The conductor does not claim that he heard said words. He testified that he was pretty sure a signal was given; that it was his recollection that it came from one Ramsey. The latter's recollection was deficient on that point. Other men, who were about the head of the train, testified that they saw no signal given to the conductor and heard no warning.

There is no reason for disturbing the verdict. Judgment affirmed.