McDonald et al. *v.* Swanson et al.

[No. 15,129. Filed May 12, 1936. Rehearing denied October 14, 1936. Transfer denied February 1, 1937.]

*Oscar B. Thiel,* for appellants.

*Hodges, Davis & Hodges,* for appellees.

KIME, P. J.—Estella Swanson as plaintiff below brought an action by a complaint in one paragraph for damages, as a result of personal injuries sustained by her, against Lloyd McDonald, John Langbehn and United Cab Company, a corporation, as defendants. The complaint alleged negligence in the operation of a taxicab by Lloyd McDonald, who was driving the taxicab

which caused the injuries; that at the time of the accident he was in the employ and was the agent and servant of John Langbehn and the United Cab Company and that the plaintiff, when she received the injuries complained of, was riding in an automobile driven by her husband. To this complaint the defendants McDonald and Langbehn filed answer in general denial. The defendant, United Cab Company, was defaulted.

The cause was tried by jury who returned a verdict in favor of plaintiff for $3,000.00 and judgment was rendered thereon in said sum against all the defendants.

The separate and several motion of John Langbehn and Lloyd McDonald for a new trial, containing forty grounds, was overruled and this appeal followed. The error assigned is the overruling of said motion.

The first question presented is whether or not Lloyd McDonald was negligent in the operation of the taxicab which he was driving at the time of the accident. The evidence most favorable to the appellee, Estella Swanson, discloses that she was riding in the rear seat of an automobile driven by her husband west on Sixth Avenue in the city of Gary, at about twenty miles per hour; that as the automobile driven by Mr. Swanson approached the intersection of Sixth Avenue and Broadway the stop-and-go light on Sixth Avenue showed green; that when Mr. Swanson's automobile entered the intersection the stop-and-go light was still green for east and west traffic; that the taxicab driven by said McDonald approached the said intersection from the north about ten or twelve miles per hour; that at that time there were two automobiles at the northwest corner of the intersection headed south, waiting for the lights to change from red to green; that the taxicab did not stop before it entered the intersection; that it passed to the left of the two waiting automobiles; that as it passed the curb line it picked up speed and went on;

that after Mr. Swanson's car passed the intersection the stop-and-go lights started to change; that such lights were changing when the automobiles collided; that they had not fully changed and that the yellow light was showing when the collision occurred; that the lights governing north and south traffic had not turned green before the accident occurred. Ordinance 1556, Section 3, Article 3, of the city of Gary reads as follows:

"All traffic on approaching any street intersection within the corporate limits of the City of Gary, where stop lights, stop signs, or automatic stop and go lights are now or may hereafter be installed shall proceed as indicated by said signals. Pedestrians shall cross the roadway on the green light; and the red light shall mean that all traffic approaching from that direction shall stop and the traffic shall then proceed when the green light shows; Provided, however, that it shall be unlawful for any vehicle to enter the street intersection when the yellow or red light is showing. Traffic signals shall be turned off between the hours of one o'clock a. m. and 5:30 a. m. except when traffic requirements are heavy."

which ordinance was admitted in evidence.

From the above facts the jury was justified in finding that McDonald was negligent in his operation of the taxicab and that such negligence was the proximate cause of the accident.

The next question is whether there was sufficient evidence from which the jury could find that McDonald was the employee or agent of Langbehn at the time of the accident. The evidence shows that said Langbehn was in the taxicab business and that such business, in name only, was incorporated as United Cab Company; that he was the owner of United Cab No. 61 (being the one in the accident herein) ; that he purchased this cab on June 17, 1931; that at the time of the accident he was renting cabs out at $3.00

each per day on oral lease; that he (Langbehn) paid for the repairs to such cabs, the oil used therein, garage facilities and all other expenses other than gasoline; that the arrangement on which the cabs were leased was that a man took the cab at 6:00 o'clock A. M. until 6:00 o'clock P. M. and *that he was left on until he disobeyed some rule of the corporation and the manager saw fit to discharge him*" and that after the accident McDonald drove the cab until the middle of the summer previous to the date of trial when he had *"quit."* That John Langbehn was manager of the cab company at the time of the accident.

That §§284, 285, 286 and 287 of City Ordinance 569 of the city of Gary provide that it is unlawful for any person to keep or operate for hire any automobile or taxicab in the city of Gary without first obtaining a license to operate such a cab; fixes the fee and manner of paying for such license and further provide that every person operating a taxicab in that city should, at the time of taking out the license, file with the city comptroller a bond or public liability policy payable to the city of Gary for the faithful compliance of the terms and conditions of this ordinance.

That John Langbehn purchased a license to operate the taxicab herein involved in August, 1931, that he also filed with the comptroller's office, shortly after the issuing of the above license, an insurance policy in order to comply with §287, *supra*; that the insurance policy, among other things, provided that "The automobile described herein is operated by the assured and members of his family, or his duly authorized employees except:—no exceptions" and "LIVERY AND RENTING PERMIT. In consideration of the premium at which this policy is written permission is granted for the automobile described herein to be used as a public or livery conveyance for carrying passengers for com-

pensation, or to be rented under contract or leased, *provided that while being so used, rented, or leased, it is operated and controlled by the assured or by a person regularly employed by him as a chauffeur, but not otherwise. . . ."*

That McDonald had been driving the taxicab from the date of its purchase and reported the accident to Langbehn immediately.

From the above and foregoing the jury could reasonably conclude that McDonald was the agent and employee of John Langbehn in the operation of the taxicab involved in the collision; and that Langbehn procured and kept in effect such license and insurance for the benefit of himself and of his employee McDonald. Hence the verdict of the jury is sustained by sufficient evidence and is not contrary to law.

Appellant contends that the court erred in refusing to give to the jury at the close of all the evidence appellant Langbehn's tendered instruction numbered 1-A, which was a peremptory instruction directing the jury to find for said Langbehn. "It is well established that a peremptory instruction should not be given unless there is a total lack of evidence upon some material issue, or where there is no conflict, and the evidence is susceptible of but one inference, and that inference is favorable to the party asking the instruction. . . .

"The trial court, before it gives a peremptory instruction, must accept as true all facts which the evidence tends to prove, and must draw against the party asking the instruction all inferences which the jury might reasonably have drawn, and if there are legitimate inferences tending to support the right of recovery in favor of one against whom the instruction is asked, the question should be left to the jury." *Gulbranson* v. *Hart* (1929), 90 Ind. App. 171, 177, 168 N. E. 483. From the

evidence the jury could have found for or against Langbehn and since there was such conflict of evidence the jury was entitled to pass upon the evidence, therefore, the court did not err in refusing to give the peremptory instruction.

Appellants next contend that the court erred in admitting in evidence plaintiff's exhibit 3, being the insurance policy filed by said Langbehn with the comptroller's office. One of the issues in this cause was whether McDonald was the agent or employee of Langbehn. The evidence discloses that Langbehn was in the taxicab business and at the time he purchased the taxicab herein he not only obtained license in his own name to operate such taxicab but procured the insurance, as the ordinance required, on the taxicab herein involved; that McDonald had been driving the said taxicab from the date of its purchase until he quit some time after the accident. The appellee at the time of the introduction of this exhibit informed the court, upon appellants' objection to such introduction, that such exhibit was offered "to show the relationship between John Langbehn and the person using this car at the time of the accident." The jury could have and apparently did draw the inference from the above evidence that Langbehn, as owner of the taxicab, by complying with the above ordinances intended to operate this taxicab through certain employees, of whom McDonald was one. Thus this policy was admissible in evidence as proof of the agency relationship existing between Langbehn, the owner of the taxicab, and McDonald, the driver. *Tanner* v. *Smith* (1934), 97 Mont. 229, 33 Pac. (2d) 547; *Boten* v. *Sheffield Ice Co.* (1914), 180 Mo. App. 96, 166 S. W. 883; *Parker* v. *Norton et al.* (1933), 143 Ore. 165, 21 Pac. (2d) 790; *Gayheart et al.* v. *Smith* (1931), 240 Ky. 611, 42 S. W. (2d) 876; *Steinman* v. *Brownfield* (1929), (Mo. App.), 18 S.

W. (2d) 528; *Finkebine Lbr. Co.* v. *Cunningham* (1912), 101 Miss. 292, 57 So. 916; *Robinson* v. *Hill* (1910), 60 Wash. 615, 111 Pac. 871, and *Paepke* v. *Stadelman* (1927), (Mo. App.), 300 S. W. 845.

The court did not err in admitting in evidence the City Ordinances above mentioned for the reason that in order to show the relationship existing between appellants, the compliance with the ordinances by Langbehn had to be shown and such compliance evidenced, among other things, the intention of Langbehn to operate the taxicab within the limits of the city of Gary. The taking out of the license by Langbehn to so operate the taxicab and the depositing by him with the city comptroller of the public liability policy mentioned in the ordinance could not be shown without first laying the proper foundation for the introduction of such exhibits. The ordinance was admissible for the purpose of paving the way to the introduction of evidence of an employer and employee relationship between Langbehn and McDonald in the operation of the taxicab involved in the collision.

Appellants contend that the court erred in admitting in evidence the insurance policy for the reason that such evidence impeached the testimony of Langbehn as disclosed by his conditional examination which was, prior thereto, introduced in evidence by appellee. The said conditional examination disclosed that Langbehn testified that the taxicab in question had been rented by him, at the time of the accident, to McDonald, and that McDonald was not his employee. The policy was introduced during the testimony of another witness to show the agency relationship existing between the owner and driver of the taxicab, which evidence contradicted the testimony contained in the conditional examination. In the case of *Crocker* v. *Augenboard* (1889), 122 Ind. 585, 586, 24 N. E. 169, the court said: "It

appears in the record that before the trial the appellee examined the appellant under the provisions of section 510, R. S. 1881, and the examination as taken was filed as a deposition in the cause, as provided in section 511, R. S. 1881.

"Upon the trial, and to support his case in the first instance, the appellee read the said examination in evidence, and then placed himself on the witness-stand as a witness, and testified to a state of facts directly in conflict with some of the answers made by the appellant in his said examination, and in addition, in specific and direct language, negatived certain of the said answers made by the appellant.

"The contention on the part of the appellant is, that by the introduction of the ante-trial examination the appellee made the appellant his own witness, and was therefore bound by the said examination so far that he could not in direct and specific language negative any part of the said examination; and that in admitting such testimony over the appellant's objection, the court committed an error; that the appellee could not impeach his own witness, and that the evidence objected to was in its character impeaching testimony. . . .

"It has always been the rule that a party calling a witness who testifies in a given direction, is not concluded from showing by other witnesses the contrary of what the first witness testifies to. This much is conceded by the appellant.

"The appellee, then, was entitled to prove by other witnesses that the particular testimony given by the appellant in his said examination was not, in fact, true; . . ." On authority of the above case we hold that the court did not err in the admission of the evidence complained of.

Appellants set out four separate alleged improper remarks made by counsel for appellee to the jury in the

course of the trial and insist that in each instance the court committed reversible error in not withdrawing the case from the jury. In each of these instances the court refused to withdraw the case from the jury but on three of such occasions instructed the jury to disregard such remarks. "Appellant was only entitled to have the jury sufficiently admonished without delay that the statements should not be considered." *Southern Indiana Railway Co.* v. *Fine* (1904), 163 Ind. 617, 72 N. E. 589. While such remarks may have been improper they were not such as could not be cured by the court's instruction to disregard them, and the court committed no error in refusing to withdraw the cause from the jury. *Vandalia Coal Co.* v. *Price* (1912), 178 Ind. 546, 97 N. E. 429; *Southern Ry. Co.* v. *Fine, supra; Lake Erie & W. R. R. Co.* v. *Howarth* (1919), 73 Ind. App. 454, 124 N. E. 687. It must be presumed that a jury of ordinary intelligence would ignore improper remarks, made by counsel during the trial, when instructed by the court to ignore such remarks. *New York Central Railroad Co.* v. *De-Leury* (1934), 100 Ind. App. 140, 192 N. E. 125, and cases there cited.

The fourth alleged improper remark made by counsel for appellee was "The relationship of employer and employee existed; McDonald was his agent on this morning and Langbehn is also responsible. Having in view the proof of that relationship, the plaintiff in this case has introduced in evidence this insurance policy." In view of the fact that we have held that the insurance policy was properly admitted in evidence the above remark was not improper.

The judgment of the Lake Superior Court is in all things affirmed.